25CA0506 Marriage of Mullins 07-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0506
Jefferson County District Court No. 23DR30326
Honorable Tamara S. Russell, Judge

---

In re the Marriage of

Daniel Trout Mullins,

Appellant,

and

Jessica Lynn Mullins,

Appellee.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE JOHNSON
Pawar and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 30, 2026

---

The Harris Law Firm PLLP, Katherine O. Ellis, Denver, Colorado, for Appellant

Jessica Lynn Mullins, Pro Se

¶ 1     In this dissolution of marriage case, Daniel Trout Mullins (husband) appeals the portions of the district court's permanent orders concerning maintenance and child support.  We affirm.

## I.     Relevant Facts

¶ 2     Husband and Jessica Lynn Mullins (wife) were married nearly seventeen years when husband petitioned to dissolve their marriage.  The parties mediated an agreement regarding the division of their marital estate and filed a memorandum of understanding to that effect, which was adopted by the court.

¶ 3     Later, the district court held a permanent orders hearing regarding the remaining issues, including child support and wife's maintenance request.  After the hearing, the court issued permanent orders and dissolved the parties' marriage.  It found that wife's monthly income was $8,210 and that husband's monthly income was $25,273.  Using these incomes, the court calculated maintenance based on the advisory guidelines in section 14-10-114(3)(b), C.R.S. 2025, and ordered that husband pay wife $3,887 in monthly maintenance for a term of eight years and nine months.  This award was less than that requested by wife.  The court later

determined wife's child support obligation based on husband's majority parenting time.

## II.     Child Support and Maintenance

¶ 4     Husband contends that the district court erred in its determination of (1) the parties' incomes for purposes of child support and maintenance and (2) the amount and duration of its maintenance award.  We disagree with husband about the income findings.  And, while we agree with him that the court erred by calculating the amount of its maintenance award, we conclude the error was harmless.

### A.     Standard of Review

¶ 5     We review maintenance and child support orders for an abuse of discretion.  *In re Marriage of Schaefer*, 2022 COA 112, ¶ 8.  A court abuses its discretion when it acts in a manifestly arbitrary, unfair, or unreasonable manner, or when it misapplies the law. *In re Marriage of Herold*, 2021 COA 16, ¶ 5.  We defer to the court's factual findings so long as they are supported by the record.  *In re Marriage of Connerton*, 260 P.3d 62, 66 (Colo. App. 2010).  But we review de novo whether the court applied the proper legal standard. *Schaefer*, ¶ 8.

## B.  Income Calculations

### 1.  Legal Principles

¶ 6      To calculate maintenance and child support, a court must first determine the parties' incomes.  *See In re Marriage of Tooker*, 2019 COA 83, ¶ 13.  In this context, income means a party's actual gross income if the party is fully employed.  § 14-10-114(8)(a)(II), C.R.S. 2025 (maintenance); § 14-10-115(3)(c), C.R.S. 2025 (child support).  "Gross income" means income from any source, including from salaries and bonuses.  § 14-10-114(8)(c)(I); § 14-10-115(5)(a)(I).

### 2.  Wife's Income

¶ 7      Husband contends that the record contains no support for the district court's finding that wife's monthly income was $8,210.

¶ 8      Finding that wife works full-time at a new job, the court based its finding as to her income on her salary from that job and her investment income from property she received in this case.  Contrary to husband's assertion, the court's findings are sufficiently explicit such that we have an understanding of the basis for its decision.  *See In re Marriage of Gibbs*, 2019 COA 104, ¶ 9.

¶ 9      Wife had just started a new position at the time of the permanent orders hearing, earning a monthly salary of $7,083.  She

explained that, while eligible for bonuses in this new role, she had not received any and didn't "know anything" about them. As husband notes, the $8,210 figure appears in the record in a maintenance worksheet admitted as only a demonstrative exhibit. Wife testified that she reached this figure by approximating her expected interest and dividend income and adding that amount to her salary. To calculate the investment income portion, wife used an average of the parties' past investment income from several tax returns, most of which were admitted as exhibits.

¶ 10 Husband points to evidence in the record that could have supported a higher income finding, such as dividend information from one specific tax return and wife's eligibility for bonuses. But because the record contains support for the court's income finding, we discern no error, as it is for the district court, and not us, to resolve any contested evidence. *See Connerton*, 260 P.3d at 66; *see also Tooker*, ¶ 31 (recognizing that any conclusions to be drawn from the conflicting evidence were for the district court to resolve); *In re Marriage of Thorburn*, 2022 COA 80, ¶ 49 (it is for the district court to determine witness credibility and the weight, probative

force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom).

### 3. Husband's Income

¶ 11 Husband next asserts that the court erred by including one of his bonuses as income for maintenance and child support purposes. He testified that he received approximately $10,613 in monthly bonus income from two bonuses, split about evenly between the two. Husband received one of the bonuses based on his percentage of ownership in his company. Husband testified that he received this bonus in cash but that his employer "expect[ed]" him to use the bonuses to invest in additional shares, and that not doing so would effectively make him ineligible for future bonuses. Given this, he asserts that the bonus was not income but instead akin to unrealized gains in an investment account. In *Schaefer*, ¶ 20, a division of this court held that "unrealized, paper only gains in an investment account are not income for maintenance and child support purposes," as they cannot "be used to meet living expenses, pay discretionary expenses, or increase the recipient's standard of living." (citation

modified).  In other words, a person can spend the bonus, while such is not true for unrealized gains.

¶ 12    The court implicitly made a factual finding that husband's bonus qualified as income.  The record supports this finding because, unlike unrealized gains, husband received his bonus in cash.  That husband chose to invest this bonus in his company or that not doing so could affect future bonus opportunities does not make his bonus tantamount to unrealized gains, unavailable for meeting expenses.  *See id.*  Thus, the court properly included all of his bonus income as income.  *See* § 14-10-114(8)(c)(I)(E) (for purposes of maintenance, gross income includes bonuses); § 14-10-115(5)(a)(I)(E) (same for child support).[1]

---

[1] We do not address husband's claims that the court's income calculations caused an inequitable result or that the court improperly based his income on a single, atypically high-earning year.  That is because he fails to develop arguments on these bases, *see Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12, or seeks to do so in his reply brief, *see In re Marriage of Dean*, 2017 COA 51, ¶ 31.

## C. Determination of Maintenance

### 1. Legal Principles

¶ 13     Section 14-10-114(3) sets forth the process a court must follow when considering a maintenance request. *In re Marriage of Wright*, 2020 COA 11, ¶ 13. The court must first make findings on the amount of each party's gross income, the marital property apportioned to each party, each party's financial resources, the parties' reasonable financial need as established during the marriage, and the taxability and tax deductibility of any maintenance payments. § 14-10-114(3)(a)(I); *Wright*, ¶ 14.

¶ 14     The court then must determine an amount and term of maintenance, if any, that is fair and equitable by considering the statutory advisory guidelines and a list of nonexclusive statutory factors. § 14-10-114(3)(a)(II)(A)-(B), (3)(b), (3)(c); *Wright*, ¶ 15. But when, as here, the parties' combined annual adjusted gross income exceeds $240,000, the advisory guideline amount of maintenance under section 14-10-114(3)(b)(I) "does not apply." *See* § 14-10-114(3.5). Instead, the court must determine the amount of maintenance based on its consideration of the statutory factors in section 14-10-114(3)(c). § 14-10-114(3.5); *Herold*, ¶ 26. As part of

7

this determination, the court may consider the advisory guideline term of maintenance set forth in section 14-10-114(3)(b)(II). § 14-10-114(3.5).

¶ 15     Next, the court must determine whether the requesting spouse qualifies for maintenance, meaning that the spouse lacks sufficient property to provide for their reasonable needs and is unable to support themself through appropriate employment.  *See* § 14-10-114(3)(a)(II)(C), (3)(d); *Wright*, ¶ 16.

¶ 16     Finally, the court must make specific written or oral findings in support of the amount and term of maintenance awarded.  § 14-10-114(3)(e).

### 2.     Maintenance Guideline and Term

#### a.     Additional Background

¶ 17     At the permanent orders hearing, husband asserted that wife could provide for her reasonable needs and, thus, was not entitled to maintenance.  For her part, wife requested $4,300 in monthly maintenance for a term of eight years and ten months.

¶ 18     In its oral ruling, the court recognized that the advisory guidelines did not apply because the parties' combined adjusted gross annual income exceeded $240,000.  It found that wife's

monthly income was $8,210, and that husband's monthly income was $25,273.

¶ 19    The court then made findings considering many of the section 14-10-114(3)(c) factors, including the parties' lifestyle during the marriage, historical incomes, economic and noneconomic contributions to the marriage, as well as the distribution of marital property.  It also examined the parties' financial resources, including the potential that much of husband's income was invested.  *See* § 14-10-114(3)(c)(I)-(II).  Based on these considerations, it concluded that wife qualified for maintenance.  *See* § 14-10-114(3)(a)(II)(C), (3)(d); *Wright,* ¶ 16.

¶ 20    The court, however, did not initially identify its maintenance award.  Rather, it requested that the parties calculate maintenance based on a worksheet.  When wife's counsel later asked the court to identify the amount of its award, the court responded that it didn't "know," which was why it was requesting the parties to "extrapolate from the [m]aintenance [w]orksheet."

¶ 21    After wife's counsel generated a worksheet that utilized the advisory guideline calculation procedure, the court granted wife

$3,887 in monthly maintenance. It ordered that husband pay this amount for a term of eight years and nine months.

### b. Analysis

¶ 22 Husband contends that the district court improperly "extrapolated" from the statutory guidelines to calculate its maintenance award.

¶ 23 While the court thoroughly considered the section 14-10-114(3)(c) factors, it solely relied on mother's worksheet to determine the amount of its award. Because the worksheet calculated maintenance based on the advisory guidelines, the court determined the award amount solely on the guidelines. Doing so was improper because the guidelines do not apply when the parties' incomes exceed the $240,000 statutory cap, as here. *See* § 14-10-114(3.5). The court should have instead decided the amount based on its consideration of the section 14-10-114(3)(c) factors. *See* § 14-10-114(3.5); *Herold*, ¶ 26. Thus, while the court was aware that the advisory guidelines did not apply here, and while it considered the relevant statutory factors to determine that wife was entitled to maintenance, it erred by determining the maintenance amount without linking the ordered amount to the factors.

¶ 24    Yet, husband does not articulate how the court's use of this method to calculate the maintenance amount was not harmless; in other words, he did not argue that the procedure prejudiced his substantial rights. *See* C.R.C.P. 61; C.A.R. 35(c). He maintained in the district court and on appeal that wife was not entitled to *any* maintenance and proposed no alternative award amount. The court, based on its examination of the section 14-10-114(3)(c) factors, including the parties' lifestyle during the marriage and disparate incomes, rejected husband's position that wife was not entitled to maintenance. That determination is supported by the record. Because the court calculated maintenance pursuant to the advisory guidelines, it granted wife an award that was appreciably lower than the amount she sought. As a result, husband does not explain how he was prejudiced by the court calculating maintenance in this method, which resulted in this lower award for wife. *See People in Interest of A.C.,* 170 P.3d 844, 845 (Colo. App. 2007) (concluding that an alleged error, without a valid allegation of prejudice, is not grounds for reversal). Accordingly, we do not disturb the maintenance award on this basis. *See id.*

11

¶ 25    Husband also asserts that the court erred by deciding the term of its maintenance award based on the advisory guidelines. We disagree.  The court ordered husband to pay monthly maintenance for a term of eight years and nine months, which was one month less than the relevant advisory guideline duration. *See* § 14-10-114(3)(b)(II).  True, the court's ruling reflects that it considered the guideline term in determining this duration, but doing so was not error.  *See* § 14-10-114(3.5) (even when the parties' combined incomes exceed the statutory cap, a court may consider the advisory guideline term under section 14-10-114(3)(b)(II)).

### 3.    Tax Implications

¶ 26    Husband also contends that the court failed to make mandatory findings on the federal income tax implications of the maintenance award.[2]  *See* § 14-10-114(3)(a)(I)(E) (the court must make written or oral findings concerning whether the award would be deductible by the payor spouse and taxable income to the

---

[2] To the extent that wife argues husband was required to preserve this contention, we disagree.  A party is not required to object to findings to preserve a challenge to those findings.  *See* C.R.C.P. 52; *People in Interest of D.B.*, 2017 COA 139, ¶ 30.

recipient spouse). Although the court did not make a specific oral or written finding on this issue, its ruling reflects that it considered the issue, as well as an implicit finding that maintenance was not tax deductible and not taxable income.

¶ 27 Section 14-10-114(3)(b) provides a formula to calculate the guideline amount of maintenance when it is deductible for federal income tax purposes, and a different formula when it is not. *See* § 14-10-114(3)(b)(I)(A)-(C). As noted, the court ordered husband to pay $3,887 in monthly maintenance. On review, we discern that it calculated the guideline amount under the formula for an award that is not tax deductible. *See* § 14-10-114(3)(b)(I)(C). Indeed, the court based the award on wife's proposed worksheet, which confirmed that the award was not tax deductible.

¶ 28 From this, we glean that the court implicitly found that maintenance was not deductible for federal income tax purposes. *Cf. In re Marriage of Serdinsky*, 740 P.2d 521, 523 (Colo. 1987) (recognizing that a district court's maintenance finding may be implicit in its order). This finding makes sense, given that under federal tax law, "[maintenance] payments are no longer tax deductible and are not considered taxable income to the person

13

receiving them." *In re Marriage of Mann*, 943 N.W.2d 15, 21 (Iowa 2020); *see* Tax Cuts and Jobs Act of 2017, Pub. L. No. 115-97, § 11051, 131 Stat. 2054, 2089 (2017) (repealing 26 U.S.C. § 215). To the extent that husband asserts that this implied finding was not sufficient, he again fails to argue how the lack of any explicit findings prejudiced his substantial rights.

¶ 29 Finally, we address husband's contention that the court failed to consider the parties' respective tax rates when determining maintenance. More precisely, he asserts that "extrapolating" from the guidelines does not adjust for any "changes" in the parties' tax rates, given that their combined income exceeds the limit contemplated by the guidelines and multipliers therein. *See* § 14-10-114(3)(b)(I) (providing distinct formulas for parties' combined monthly income of less than ten thousand dollars and for those between ten thousand and twenty thousand dollars).

¶ 30 But husband doesn't point to anywhere in the record he offered evidence concerning the parties' tax rates. *See* C.A.R. 28(a)(5) (It is the appellant's responsibility to include "appropriate references to the record.") Nor does our review of the record reveal that he did so. This was at husband's own peril because he was

14

aware the parties' combined income exceeded the statutory cap. Given that, husband cannot argue here that the district court failed to consider evidence that he did not present. *See In re Marriage of Zappanti*, 80 P.3d 889, 892 (Colo. App. 2003) (a party who fails to present sufficient evidence at trial should not be allowed on appeal to challenge the inadequacy of the evidence). We thus decline to disturb the court's maintenance award.

## III. Conclusion

¶ 31    The judgment is affirmed.

JUDGE PAWAR and JUDGE GOMEZ concur.